**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| **RICHARD DONALDSON**, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>**PRIMARY RESIDENTIAL MORTGAGE, INC.**<br><br>Defendant. | Case No. 1:19-cv-01175-ELH |

**MEMORANDUM IN SUPPORT OF SETTLEMENT CLASS COUNSEL'S PETITION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVES' SERVICE AWARDS**

Pursuant to Federal Rules of Civil Procedure 23(e) and 54(d)(2) and 12 U.S.C. § 2607(d)(5), and this Court's Order granting preliminary approval of the class action settlement asserted against Defendant Primary Residential Mortgage, Inc. ("Primary Residential"), Plaintiffs and Class Representative Richard Donaldson and Walter and Dawn Sperl (collectively "Plaintiffs"), through Settlement Class Counsel, submit this Memorandum of Law in support of their Petition for Attorneys' Fes and Expenses and Class Representatives' Service Awards.

Per the Settlement Agreement entered by the Parties,[1] the Parties agreed that Settlement Class Counsel would have the right to request an award of attorneys' fees in an amount not to exceed One-Third of the Settlement Benefits, plus expenses limited to Seven Thousand dollars ($7,000.00), no later than thirty (30) days before the Final Fairness Hearing. ECF 47, Ex. 1 Settlement Agreement at § 12. Primary Residential also agreed that the Class Representatives have the right to request a Service Award not to exceed "One Thousand Dollars ($1,000.00) for Richard

[1] Capitalized terms are defined pursuant to the terms set forth in the Settlement Agreement.

Donaldson and One Thousand Dollars for Walter and Dawn Sperl, combined ("Service Award")[,]" which is to be paid in addition to the Settlement Benefits available to the Class Representatives for their participation in the litigation and settlement. ECF No. 47, at Ex.1, Settlement Agreement at § 11 (hereafter "Settlement Agreement"). The requested attorneys' fees, expenses, and service awards are fair and reasonable and should be granted.

The amount of the Settlement Class Benefit is substantial. After more than a year and a half of contentious litigation with Defendant, Settlement Class Counsel achieved a significant settlement for the Settlement Class, which means a recovery on 159 class loans equal to 220% of the Section 1100 fees paid by the Settlement Class Members and reflected on their final HUD-1 Settlement Statement for the subject loan, less the amount of Line 1108 fees reflected on the Settlement Class Member's final HUD-1 Settlement Statement for the subject loan ((Section 1100 – Line 1108) x 2.2 = Settlement Benefits). The average per loan recovery is expected to exceed $2,200. If approved, the Settlement Benefits in the Common Fund will be valued at approximately $347,158.55.

## RELEVANT FACTUAL BACKGROUND

### 1. Pre-suit Investigation and Discovery

Settlement Class Counsel began the investigation that gave rise to this action against Primary Residential in 2018. Settlement Class Counsel received information that All Star Title, Inc. ("All Star") was paying kickbacks to lenders in exchange for the assignment and referral of residential mortgage loans for title and settlement services. Settlement Class Counsel undertook expansive research of public land records in states across the United States to identify those lenders closing loans with All Star during the relevant time and the specific loan officers and branches with high volumes of loan closings. From this research of tens of thousands of land records

Settlement Class Counsel identified Primary Residential as a potential participant in the All Star kickbacks.

At the time All Star was ceasing operations, the Circuit Court for Baltimore County, Maryland, appointed David D. Gillis as Receiver of All Star's "papers and electronic books and records," including documents and electronically stored information from All Star's servers (to the extent that electronically stored information existed at the time of appointment of the Receiver). Those documents and electronically stored information remain in the possession and control of Mr. Gillis but are, and have been, available to Plaintiffs and Primary Residential.

Plaintiffs' counsel conducted extensive investigation of these documents and electronically stored information (more than one million records) to determine the scope and structure of the alleged scheme, Primary Residential's participation in the scheme, and, through additional public land records research, potential victims of the alleged scheme. Upon investigation of the documents, Plaintiffs' counsel discovered Primary Residential began to participate in the alleged scheme beginning by at least late 2009. As a result, Plaintiffs filed their Class Action Complaint against Defendant.

**2. Procedural History**

Plaintiffs filed their Class Action Complaint against Primary Residential on April 23, 2019 (ECF No. 1). Primary Residential moved to dismiss the Complaint on September 3, 2019 (ECF No. 9). Plaintiffs responded on October 4, 2019 (ECF No. 12). This Court issued its order without a hearing on June 15, 2020 (ECF No. 27). This Court granted in part and denied in part Defendant's Motion to Dismiss. This Court granted and dismissed without prejudice as to Count III (RICO) and denied as to Count I (RESPA). Defendant answered on June 30, 2020. (ECF No. 28).

Plaintiffs' Complaint alleges that, from roughly October 1, 2009 through January 31, 2016, Primary Residential, and its brokers, employees, and/or agents, participated in an illegal kickback scheme with All Star, Inc. ("All Star"). Specifically, Plaintiffs allege that All Star paid, and Primary Residential received and accepted, illegal kickbacks in exchange for Primary Residential's assignment and referral of residential mortgage loans, refinances, and reverse mortgages to All Star for title and settlement services, in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et. seq.* To fund these illegal kickbacks, Primary Residential and All Star charged borrowers unnecessarily increased prices for title and settlement services. Primary Residential denies the material allegations of the Complaint and denies any and all liability to the alleged class.

**3. Negotiations and Preliminary Approval of Settlement**

After filing the Complaint, Plaintiffs and Primary Residential engaged in protracted informal settlement negotiations over more than four months, which initially failed. After this Court denied Primary Residential's Motion to Dismiss (ECF No. 9), Plaintiffs served discovery requests. Plaintiffs and Primary Residential again began to discuss possible settlement in October 2020. After a thorough investigation of the records in this case regarding All Star and Primary Residential and a second full day of mediation with the Honorable Steven L. Platt, ret., Plaintiffs and Primary Residential reached a proposed settlement with respect to all claims involving Primary Residential in this action (the "Settlement").

Plaintiffs moved for preliminary approval of the Settlement Agreement on January 8, 2021. On January 11, 2021, this Court granted Plaintiffs' motion (ECF No. 49). The Order designated Michael Paul Smith and Melissa L. English of Smith, Gildea & Schmidt, LLC, and Timothy J. Maloney and Veronica B. Nannis of Joseph, Greenwald and Laake, P.A., as Settlement Class

Counsel. This Court set the deadline for filing the Petition for Class Counsel's Fees and Costs no later than 30 days prior to the Final Fairness Hearing, for filing the Petition for Class Representatives' Service Awards no later than 35 days prior to the Final Fairness Hearing, and for filing the Joint Motion Seeking Final Approval of Settlement no later than 21 days prior to the Final Fairness Hearing. The Final Fairness Hearing is currently scheduled for May 28, 2021 at 10:00 a.m. in Courtroom 5B at the United States District Court for the District of Maryland, 101 West Lombard Street, Baltimore, MD 21201.

Pursuant to the Settlement Agreement and following preliminary approval, Primary Residential issued the required Class Action Fairness Act ("CAFA") Notice of Class Action and Proposed Settlement to the applicable federal agencies and filed a Motion for Finding of Compliance with the Class Action Fairness Act's Notice Requirements (ECF No. 50). The appointed Settlement Administrator, Dorothy Sue Merryman, issued the approved Notices to the Settlement Class on February 1, 2021. *See* Ex. 1. The objection or exclusion deadline passed on March 18, 2021, and no objections or requests for exclusion were received.

Accordingly, Plaintiffs respectfully request this Court grant Plaintiffs' Petition for Attorneys' Fees, Reimbursement of Expenses, and Class Representatives' Service Awards.[2]

**4. Terms of the Settlement Agreement**

The Settlement Agreement provides for direct payment of Settlement Benefits to the Settlement Class members "in an amount equal to 220% of the Section 1100 fees reflected on the Settlement Class Member's final HUD-1 Settlement Statement for the subject loan, less the amount of Line 1108 fees reflected on the Settlement Class Member's final HUD-1 Settlement

[2] Plaintiffs incorporate herein by reference their Motion for Preliminary Approval and this Court's Order Granting Preliminary Approval. Plaintiffs also incorporate herein the Parties' Joint Motion for Final Approval of Settlement to be filed May 7, 2021.

Statement for the subject loan ((Section 1100 – Line 1108) x 2.2 = Settlement Benefits)". Settlement Agreement at § 6.1. The Settlement Agreement defined the Settlement Class as follows:

> [A]ll individuals in the United States who were borrowers on a federally related mortgage (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by Primary Residential Mortgage Inc. for which All Star Title, Inc. provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between October 1, 2009 and January 31, 2016. Exempted from this class is any person who, during the period of October 1, 2009 through January 31, 2016, was an employee, officer, member and/or agent of Primary Residential Mortgage Inc. or All Star Title, Inc.; and any judicial officer who handles this case, and the immediate family members of such judicial officer(s).

Settlement Agreement at § 2.22. With 159 loans, the Settlement Benefits to the Settlement Class Members total $347,158.55.

The Settlement Agreement specifically provided,

> no later than thirty (30) days before the Final Fairness Hearing, for an award of attorneys' fees in the amount equal to One-Third of the Settlement Benefits, plus expenses limited to Seven Thousand ($7,000) Dollars.

Settlement Agreement at § 12. Class Service Awards were also addressed in the Settlement Agreement stating,

> no later than thirty-five (35) days before the Final Fairness Hearing, for a Service Award not to exceed One Thousand Dollars ($1,000) for Richard Donaldson and One Thousand Dollars ($1,000) for Walter and Dawn Sperl, combined ("Service Award").

Settlement Agreement at § 11.

This Court preliminarily found that the Settlement "constitutes a fair, reasonable, and adequate settlement of disputed and complex claims." Order Granting Preliminary Approval of Class Action Settlement at 1. In addition, the amount and details of Settlement Class Counsel's fees and costs, as well as the proposed Service Awards, were published to the Settlement Class in

the Notice of Class Action and Proposed Settlement approved by this Court. No Settlement Class Member filed an objection to the Settlement Agreement or the specified proposed awards for attorney's fees, expenses, and Class Representative service awards.

## ARGUMENT

This Court should approve Settlement Class Counsel's request for attorneys' fees, expenses, and Class Representative Service Awards.

### 1. This Court should award Settlement Class Counsel attorneys' fees.

It is not disputed that attorneys' fees are allowable in this case by rule, statute, and the Settlement Agreement. 12 U.S.C. § 2607(d)(5) ("In any private action brought pursuant to this subsection [of RESPA], the court may award to the prevailing party the court costs of the action together with reasonable attorneys' fees."); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); Settlement Agreement at § 12. Therefore, the only question before the Court is whether the fees allowable under the Settlement Agreement and requested herein by Settlement Class Counsel are reasonable.

#### a. The requested percentage is in accord with Fourth Circuit precedent.

"There are two primary methods of calculating attorneys' fees: the lodestar method and the 'percentage of recovery' method." *Fangman v. Genuine Title, LLC*, Civil Action No. RDB-14-0081, 2017 U.S. Dist. LEXIS 126772, at *8-9 (D. Md. Aug. 10, 2017) (quoting *Whitaker v. Navy Fed. Credit Union*, No. RDB-09-2288, 2010 U.S. Dist. LEXIS 106094, at *11 (D. Md. Oct. 4, 2010) (citing *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009))). "The lodestar method requires the multiplication of the number of hours worked by a reasonable hourly rate, the product of which this Court can then adjust by employing a 'multiplier.'" *Id.* at *9 (quoting

*Whitaker*, 2010 U.S. Dist. LEXIS 106094, at *11). "The percentage of the recovery method involves an award based on a percentage of the class recovery, set by the weighing of a number of factors by the court." *Id.* (quoting *Whitaker*, 2010 U.S. Dist. LEXIS 106094, at *11). In similar cases, district courts in this circuit have recognized that "using the percentage of fund method and supplementing it with the lodestar cross-check . . . take[s] advantage of the benefits of both methods." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 681 (D. Md. 2013) (quoting *In re The Mills Corp. Securities Litig*., 265 F.R.D. 246, 261 (E.D. Va. 2009)).

**i. The Attorneys Fee Request is Reasonable under the Percentage of Recovery Method.**

As of the date of filing this motion, the Common Fund is estimated to be valued at $347,158.55. Settlement Counsel's fee request is equal to one-third of the Common Fund, or $115,719.52. In evaluating reasonableness under the percentage of recovery method, district courts in this circuit have analyzed the following seven factors:

> (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy.

*Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2017 U.S. Dist. LEXIS 3180, at *10 (D. Md. Jan. 10, 2017).

**1. Substantial results were obtained for the class.**

"'[T]he most critical factor in calculating a reasonable fee award is the degree of success obtained[.]'" *Jernigan v. Protas, Spivok & Collins, LLC*, Civil Action No.: ELH-16-03058, 2017 U.S. Dist. LEXIS 154241, at *9 (D. Md. Sept. 20, 2017) (quoting *McKnight v. Circuit City Stores, Inc.*, 14 Fed. App'x 147, 149 (4th Cir. 2001)). In this case, the more than a $347,158.55 Common Fund created under the Settlement Agreement is a significant financial recovery for the Class. The

Settlement Agreement provides for direct payment of Settlement Benefits to the Settlement Class Members "in an amount equal to 220% of the Section 1100 fees reflected on the Settlement Class Member's final HUD-1 Settlement Statement for the subject loan, less the amount of Line 1108 fees reflected on the Settlement Class Member's final HUD-1 Settlement Statement for the subject loan ((Section 1100 – Line 1108) x 2.2 = Settlement Benefits)". Settlement Agreement at § 6.1. These benefits represent a substantial portion – more than two thirds – of the total that these borrowers would be entitled to recover after a successful jury verdict. *See* 12. U.S.C. § 2607(d)(2). The average Settlement Class member will recover more than $2,000, many times the amount of the kickback associated with their loan, multiples more than the amount it is estimated the kickbacks increased the cost of their title and settlement services, and more than double the amounts the Settlement Class members were charged for title and settlement services. Settlement Class Members will receive these benefits promptly and without any litigation risk. Furthermore, these benefits will not be reduced by the attorneys' fees, costs, or service awards, which Defendant has agreed to pay in addition to and separate from Settlement Benefits. Settlement Agreement at §§ 11, 12.

In addition, Settlement Benefits are being paid under a direct pay model, with Settlement lass members being mailed and receiving Settlement Benefits without the time or expense of participating in a claims process. Courts in other jurisdictions have recognized that a direct pay settlement structure is a separate, additional, and substantial benefit to the Settlement Class members. *See Palombaro v. Emery Fed. Credit Union*, No. 1:15-cv-792, 2018 U.S. Dist. LEXIS 165970, at *24-25 (S.D. Ohio Sept. 27, 2018) ("the value of the settlement benefits is high; class counsel estimate that class members will recover approximately $1,160 per loan through a direct

pay structured designed to provide settlement benefits as quickly as possible with less administrative costs . . . the Court is confident that the value of the benefits is high.”).

By any yardstick, the recovery for the Settlement Class is substantial. *See Perzinski v. Competitive Title Agency, Inc.*, Civil Action No.: 1:18-CV-01511-TJS, ECF No. 94 (D. Md. June 25, 2020) (holding that the Settlement Agreement providing 220% of settlement charges for one group of Settlement Class members and 150% of the settlement charges for another group of Settlement Class members in settlement benefits are significant); *Fangman*, 2017 U.S. Dist. LEXIS 126772, at *10 (settlement benefits equal to 220% of settlement charges “a significant financial recovery”); *Emery Fed. Credit Union*, 2018 U.S. Dist. LEXIS 165970, at *24-25 (concluding “the value of the benefits is high” on settlement benefits from RESPA kickback claims in an “amount . . . equal to nearly 65% of the title and settlement charges related to class members’ loans”).

**2. Quality, skill, and efficiency of the attorneys involved**

As set forth in the affidavits attached hereto as Exhibits 2 and 3, Settlement Class Counsel are experienced litigators who went to great lengths to prosecute this action and obtained a substantial settlement for the Settlement Class early in the litigation process. The quality and skill of Settlement Class Counsel are further evidenced by the significant investigation that was required to establish the evidentiary and legal basis for the Settlement Class’ claims and Settlement Class Counsel’s ability to successfully steer those claims through a landscape of changing law. While the pre-suit investigation was substantial, it paid off in the resolution of claims early in the litigation process. Settlement Class Counsel have demonstrated quality, skill, and efficiency.

**3. The risk of nonpayment**

"'In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis.'" *Singleton*, 976 F. Supp. 2d at 683 (quoting *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 762 (S.D.W. Va. 2009)). "The risk undertaken by class counsel is evaluated by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled." *Id.*

In this case, Settlement Class Counsel's risk of nonpayment was substantial. This case was not preceded by a government investigation or enforcement action. Settlement Class Counsel was required to build the case, identifying and discovering evidence without the benefit of a parallel government enforcement action or other proceeding. In addition to the risk of being unable to establish a sufficient evidentiary basis to file suit, Settlement Class Counsel committed significant resources to the investigation and obtaining the necessary evidence. There was a substantial risk that these resources would not be recouped.

Also, material is the statute of limitations defense Defendant asserted as a complete, affirmative defense to Plaintiffs' RESPA claims. While all trials carry risk, the presence of a complete statute of limitations defense raises the risk that even the best liability evidence will result in nonpayment after a lengthy litigation period and trial.

It is also relevant that several courts have dismissed RESPA claims in recent years. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244 (4th Cir. 2020); *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339 (4th Cir. 2014); *Taggart v. Norwest Mort., Inc.*, 539 Fed. App'x. 42 (3d Cir. 2013); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516 (10th Cir. 2013); *McCrimmon v. Wells Fargo Bank, N.A.*, 516 Fed. App'x. 372 (5th Cir. 2013). That Settlement Class Counsel was able to

achieve a settlement of substantial value at an early stage of litigation and remove the risk of nonpayment to the class militates in favor of a finding of reasonableness.

**4. Objections to the settlement**

Settlement Counsel's fee request, expenses, and service awards were described in the Class Notice. *See* ECF No. 47, Ex. 1 at Ex. A. The fact that no objections were received from the Class, "tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by class counsel." *Singleton*, 976 F. Supp. 2d at 684. "The fact that no objections have been filed further suggests that the result achieved is a desirable one." *Id.* at 683. This factor supports a finding of reasonableness.

**5. Awards in similar cases**

"Fees awarded under 'the percentage-of-recovery' method in settlements under $100 million have ranged from 15% to 40%." *Singleton*, 976 F. Supp. 2d at 685 (citing *Stoner v. CBA Information Services*, 352 F. Supp. 2d 549, 553 (E.D. Pa. 2005)). "'In fact, cases generating comparatively smaller funds can require a higher percentage fee award, due to the perception that large percentages of very large settlements lead to windfalls for attorneys.'" *Id.* (citing *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 420 (E.D. Pa. 2010) and *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998)).

Recently, this Court, the Hon. Catherine Blake presiding, looked to academic research analyzing class action recoveries over a fifteen year period in evaluating a fee request under the percentage of recovery method. *See Fire & Police Retiree Health Care Fund v. Smith*, Civil Action No. CCB-18-3670, 2020 U.S. Dist. LEXIS 217892, at *18-21 (D. Md. Nov. 20, 2020) (citing and quoting Eisenberg & Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Emp. L. Studies 248 (2008)). Under this research, the average percentage of recovery award

for similar cases – that is, class actions with a class recovery of $1.1 million or less – is 37.9% with a median percentage of recovery of 32.3%. Eisenberg & Miller, *supra* at 264-65, Table 7. Settlement Counsel's fee request of 33 1/3% is firmly within this generally accepted range and reasonable.

**6. The complexity and duration of the case**

This case is factually and legally complex. The victims in this case span hundreds of Primary Residential borrowers from October 2009 through January 2016. Beginning in October 2019, Primary Residential is alleged to have agreed to accept and receive kickbacks paid by All Star in exchange for the assignment and referral of Primary Residential brokered and/or originated loans to All Star for title and settlement services. To exchange these kickbacks, All Star allegedly paid, and Primary Residential allegedly received and accepted, the kickbacks by and through third-party marketing companies being used by Primary Residential for marketing services. All Star and Primary Residential are alleged to have caused sham third-party marketing invoices and payment records to be created in an attempt to conceal the kickbacks. The third-party marketing companies would issue the invoices, and All Star would pay the invoice pursuant to the kickback agreement between All Star and Primary Residential. Thereafter, borrower solicitations allegedly were mailed to potential borrowers. To construct the Complaint and allege the claims against Primary Residential, Plaintiffs' counsel had to trace the payments in and out of multiple bank accounts, decipher legitimate from illegitimate marketing costs, and disentangle the concealments Defendant is alleged to have put in place to prevent discovery.

This case has been actively investigated and prosecuted since 2018, and Settlement Class Counsel have gone to great lengths to identify the evidence supporting the alleged kickbacks, as well as to ascertain the Settlement Class. In addition, settlement negotiations were arduous and

hard fought. *Fire & Police Retiree Health Care Fund*, 2020 U.S. Dist. LEXIS 217892, at *22 ("while the motions practice and discovery were somewhat limited relative to the issues that may have been presented by the litigation as a whole, this is offset by the fact that settlement was nevertheless contentious."). The complexity and duration of this case support a finding of reasonableness.

**7. There are no public policy concerns.**

"'The most frequent complaint surrounding class action fees is that they are artificially high, with the result (among others) that plaintiffs' lawyers receive too much of the funds set aside to compensate victims.'" *Singleton*, 976 F. Supp. 2d at 687 (quoting *Report on Contingent Fees in Class Action Litigation*, 25 Rev. Litig. 459, 466 (2006)). "Thus, in assessing the reasonableness of the requested attorneys' fees, the court must strike the appropriate balance between promoting the important public policy that attorneys continue litigating class action cases that 'vindicate rights that might otherwise go unprotected,' and perpetuating the public perception that 'class action plaintiffs' lawyers are overcompensated for the work that they do.'" *Id.* (quoting *In re Third Circuit Task Force on the Selection of Class Counsel*, 208 F.R.D. 340, 342, 344 (Jan. 15, 2002)).

This case does not pose serious concerns with respect to public policy because the requested fees will be paid separate from, and in addition to, the Settlement Benefits to Class Members. The Settlement Benefits are substantial. Moreover, no Class Member has objected to Settlement Counsels' requested attorneys' fees. Settlement Counsel's fee request supports the public policy in favor of class action litigation because it encourages the investment in investigations and pre-suit discovery that allows clams to be discovered and prosecuted and does not pose the risk of trading settlement benefits for attorney compensation. This factor, as with the six others, favors a finding of reasonableness.

**ii. The Attorneys' Fee Request is Reasonable under the Lodestar Cross Check.**

"Under the 'lodestar' method, a district court identifies a reasonable fee award, or lodestar award, by multiplying the reasonable hours expended by a reasonable hourly rate." *Fangman*, 2017 U.S. Dist. LEXIS 126772, at *17 (citing *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 764 (D. Md. 2001)); *see also Gionfriddo v. Jason Zink, LLC*, Civil Action No.: RDB-09-1733, 2012 U.S. Dist. LEXIS 43946, at *6 (D. Md. Mar. 29, 2012) ("The calculation of a reasonable fee award, known as the lodestar award, is reached by multiplying the reasonable hours expended by a reasonable hourly rate" (citing *Xiao-Yue Gu*, 127 F. Supp. 2d at 764)). "The court may then adjust that award by employing a 'multiplier.'" *Fangman*, 2017 U.S. Dist. LEXIS 126772, at *17 (citing *Whitaker*, 2010 U.S. Dist. LEXIS 106094 at *11). "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Singleton*, 976 F. Supp. 2d at 688 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2004)).

"Importantly, 'where the lodestar fee is used as a mere cross-check to the percentage method of determining reasonable attorneys' fees, the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *Id.* (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006)). "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Singleton*, 976 F. Supp. 2d at 689 (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439, n.6 (D. Md. 1998)).

In the affidavits attached hereto as Exhibits 2 and 3, Settlement Class Counsel set forth the hours, applicable billable rates, and total value of time expended in this case. As of April 28, 2021, Settlement Class Counsel collectively expended 410.8 hours with a total billable value of

$116,782.50. Attorneys and staff of Smith, Gildea & Schmidt, LLC, expended 389.3 hours with a total billable value of $110,895.00.[3] Ex. 2 at ¶ 28. Attorneys of Joseph Greenwald & Laake, P.A., expended 21.5 hours with a total billable value of $5,887.50. Ex. 3 at ¶ 17. Settlement Class Counsel's fee request (one-third of the Common Fund, or $115,719.52) is almost one-to-one, with no multiple, of the fees incurred by Settlement Class Counsel in the prosecution of this matter.[4] This is "well within the range of reasonable…". *Fangman*, 2017 U.S. Dist. LEXIS 126772, at *20.

Under both the percentage of recovery and lodestar cross-check, Settlement Class Counsel's fee request is reasonable and should be found so by this Court.

**2. Settlement Class Counsel's request for reimbursement of their expenses should be granted.**

An award of expenses is also allowable by rule, statute, and the Settlement Agreement. 12 U.S.C. § 2607(d)(5); Fed. R. Civ. P. 23(h); Settlement Agreement at § 12 (allowing for payment of "expenses limited to Seven Thousand ($7,000) Dollars"). Settlement Class Counsel's affidavit sets forth and testifies to the expenses incurred in the investigation and prosecution of this action. Ex. 2 at ¶ 31 and Ex. C. These expenses total $7,020.22; therefore, Settlement Class Counsel's expense request of $7,000 is reasonable and should be allowed.

**3. This Court should approve the requested Service Awards.**

---

[3] Settlement Class Counsel's billable rates applied to the hours expended are consistent with those rates designated as reasonable under this Court's guidelines. *See* L.R., App'x B at 3.

[4] Settlement Class Counsel expect to expend a limited number of hours in settlement administration (such as fielding calls from class members unsure about the validity of the check they receive in the mail and requesting and processing check reissuances for misspelled names, deceased class members and other clerical errors), which will likely reduce the multiple a bit more. These estimated hours and resulting estimated fees are set forth in Ex. 2 at Exhibit A.

The Class Representatives request service awards in the amount of $1,000.00 each in addition to any Settlement Benefits to which they are entitled. The Settlement Agreement provides as follows regarding service awards:

> The Class Representatives, if appointed by the Court as representatives for the Class under this Settlement, shall have the right to petition the Court, no later than thirty-five (35) days before the Final Fairness Hearing, for a Service Award not to exceed One Thousand Dollars ($1,000) for Richard Donaldson and One Thousand Dollars ($1,000) for Walter and Dawn Sperl, combined ("Service Award"). Such Service Awards shall be paid by PRMI in addition to the Settlement Benefits. While PRMI has no obligation to support any such Petition, they agree not to object to a Petition for Service Award filed by the Class Representatives, provided that it is consistent with this Section.

Settlement Agreement at § 11.

In its January 11, 2021 Order, the Court designated the Class Representatives as follows: "Plaintiffs Richard Donaldson and Walter and Dawn Sperl are hereby designated as Class Representatives." (ECF No. 49 at ⁋ 4). As such, each of these Representatives requests a service award of $1,000 for a combined total amount of $2,000 paid in addition to the Settlement Benefits they are entitled to as Settlement Class Members.

Mr. Donaldson retained Plaintiffs' counsel on December 1, 2018, and the Sperls retained Plaintiffs' counsel on February 1, 2019. Both Mr. Donaldson and the Sperls participated in Settlement Class Counsel's investigation of the claims against Primary Residential through interviews and reviews of documents, and provided detailed information concerning the circumstances of their loan transactions with Primary Residential that was vital to Settlement Class Counsel's investigation and litigation of the Settlement Class' claims. Mr. Donaldson and the Sperls reviewed and authorized the Complaint and received and reviewed the parties' submissions on dismissal motion practice.

In addition, Mr. Donaldson and the Sperls participated in both informal settlement negotiations after filing of the Complaint and the successful mediation in October 2020. Both Mr. Donaldson and the Sperls were aware of the responsibilities of being named Class Representatives and were prepared to respond to written discovery, sit for deposition, appear for hearings, and appear and testify at trial on behalf of any certified class. Without Mr. Donaldson and the Sperls stepping forward as named Plaintiffs and proposed Class Representatives there would be no recovery for the wider Settlement Class.

The Notice given to all potential class members included notice that the Class Representatives intended to request up to $1,000 for Richard Donaldson and $1,000 for Walter and Dawn Sperl as a service award plus their individual Settlement Benefits. No objections were filed to the settlement or to the requested service awards; a presumptive acknowledgment that the award is fair and reasonable.

Service awards are common in class actions. "'Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.'" *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 468 (D. Md. 2014) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citing 4 William B. Rubenstein et al., <u>Newberg on Class Actions</u> § 11:38 (4th ed. 2008)).

The request here of $1,000 is well within the normal range for service awards. *See, Fangman*, 2017 U.S. Dist. LEXIS 126772, at *4 (noting the Court Order that approved the

requested service awards for three sets of Class Representatives in a total of $15,000); *Singleton*, 976 F. Supp. 2d at 690-91 (approving service awards of $2,500); *Shealy v. Hughes*, Case No.: 2:10-cv-714-DCN, 2011 U.S. Dist. LEXIS 173615, at *18 (D.S.C. Oct. 24, 2011) (finding that an service award of $3,500 was fair and reasonable); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558, at *25 (D. Md. July 15, 2019) (service awards of $2,000 to each of 13 Settlement Class Representatives).

Given the substantial participation by these Class Representatives, the Court should deem these awards fair and reasonable and should approve them as requested.

**CONCLUSION**

For the reasons set forth above, Settlement Counsel respectfully request that this Court grant their Petition for Attorneys' Fees and Expenses and Class Representatives' Service Awards in accordance with the Settlement Agreement.

Respectfully submitted,

______/s/____________________
Timothy F. Maloney, Esq. #03381
Veronica B. Nannis, Esq. #15679
Joseph, Greenwald & Laake
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 / (301) 220-1214 (fax)
Email: tmaloney@jgllaw.com
Email: vnannis@jgllaw.com
*Co-Counsel for Plaintiff*

_______/s/____________________
Michael Paul Smith, Esq. #23685
Melissa L. English, Esq. #19864
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, MD 21204
(410) 821-0070 / (410) 821-0071 (fax)
Email: mpsmith@sgs-law.com
Email: menglish@sgs-law.com
*Counsel for Plaintiff*