IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD DONALDSON, et al.          *
     Plaintiffs          *

     v.          *          CIVIL NO.  ELH-19-1175

PRIMARY RESIDENTIAL MORTGAGE,          *
INC.
     Defendant          *

   *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM OPINION**

Plaintiffs Richard Donaldson and Walter and Dawn Sperl filed suit in April 2019 against defendant Primary Residential Mortgage, Inc. ("PRMI" or "Primary Residential"). *See* ECF 1 (the "Complaint"). The suit, a putative class action, alleges a kickback scheme between PRMI and All Star Title, Inc., a defunct Maryland-based title and settlement services company. The plaintiffs, who are mortgagors, assert that PRMI made referrals of their loans and the loans of others to All Star for title and settlement services and, in exchange, All Star laundered payments to PRMI, largely through third party marketing companies. As a result of the scheme, plaintiffs allegedly paid inflated settlement fees.

Of relevance here, plaintiffs allege that the kickback scheme violates Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) (Count I).[1] The Complaint, which is about 60 pages in length, is supported by more than 40 exhibits.

---

[1] In Count II of their suit, plaintiffs alleged a violation of the Sherman Act, 15 U.S.C. § 1. But, they subsequently withdrew that claim. *See* ECF 14. And, in Count III, they alleged a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. By Memorandum Opinion and Order of June 12, 2020, I dismissed the RICO claim.

On January 8, 2021, plaintiffs filed an "Unopposed Motion for Preliminary Approval of Class Action Settlement of All Claims" (ECF 47), seeking, *inter alia*, preliminary certification and approval of the proposed class action settlement in this matter. By Order of January 11, 2021 (ECF 49), I granted preliminary approval of the proposed settlement and the settlement class, and directed notice to be issued to the class members, in the form prescribed.

Now pending is a "Joint Motion for Final Approval of Class Action Settlement Agreement." ECF 58 (the "Motion" or "Joint Motion"). With the Motion, the parties submitted a "[Proposed] Final Approval Order Relating to Class Action Settlement" (ECF 58-4) and a "[Proposed] Final Judgment Relating to Claims Asserted Against Primary Residential Mortgage, Inc." ECF 58-5.  Also pending is "Settlement Class Counsel's Petition for Attorneys' Fees, Reimbursement of Expenses, and Class Representatives' Service Awards for Primary Residential Settlement." ECF 54 (the "Fee Motion").

On May 28, 2021, the Court conducted a class action fairness hearing under Fed. R. Civ. P. 23 for final approval of the settlement. [2]  No objections have been lodged to the motions. Nor has any Class Member asked to opt out.  For the reasons that follow, I shall grant the motions.

## I.  Factual and Procedural Background[3]

As noted, plaintiffs contend that from approximately October 1, 2009 through January 31, 2016, Primary Residential referred its mortgage loans to All Star for title and settlement services and, in exchange, All Star laundered kickback payments to Primary Residential. ECF 1. As a result

---

[2] By agreement of counsel and the parties, the hearing was being conducted via Zoom, a platform the Court has used due to the COVID-19 global pandemic.  The public was able to participate by way of a public access telephone line.

[3] The Court cites to the electronic pagination, which does not always correspond to the pagination that appears on the actual submission.

of the scheme, plaintiffs allegedly paid inflated settlement fees.  According to plaintiffs, the kickback scheme violates Section 8(a) of RESPA, 12 U.S.C. § 2607(a).

After filing the Complaint, the parties engaged in lengthy settlement negotiations, "including the exchange of information related to the class of borrowers potentially affected by conduct alleged in the Complaint." ECF 58-1 at 2. However, those settlement negotiations were not successful.

Defendant then moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). ECF 9.  The motion was fully briefed.  By Memorandum Opinion and Order of June 12, 2020, I granted defendant's motion, in part, and denied it, in part. ECF 26; ECF 27. In particular, I denied the motion as to the RESPA claim, but dismissed the claim under the Racketeer Influenced and Corrupt Organizations Act.

Defendant answered the suit as to the RESPA claim on June 30, 2020. ECF 28.  The parties subsequently engaged in discovery.

In September 2020, the parties jointly requested a stay so that they could engage in mediation.  ECF 37; ECF 39.  I granted the requests.  ECF 38; ECF 40.  The parties participated in mediation in October 2020 (ECF 41), conducted by Judge Steven Platt, a retired Maryland judge. ECF 47-1 at 2.  In a Joint Status Report of December 23, 2020, counsel notified the Court that they had reached a settlement.  ECF 45.

On January 8, 2021, plaintiffs filed "Plaintiffs' Unopposed Motion For Preliminary Approval of Class Action Settlement of All Claims, Conditional Certification of Settlement Class, And Appointment of Class Representatives And Class Counsel For the Settlement Class."  ECF 47.  It included several exhibits, including the proposed settlement agreement (ECF 47-2), titled "Class Action Settlement Agreement" ("Agreement or "Settlement Agreement").

The Court granted preliminary approval of the Agreement on January 11, 2021. ECF 49. The Settlement Agreement is now pending before the Court for final approval, pursuant to the parties' Joint Motion. ECF 58.

## II. The Settlement Agreement

The Settlement Agreement defines the "Settlement Class" as "all individuals in the United States who were borrowers on a federally related mortgage (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by Primary Residential Mortgage Inc. for which All Star Title, Inc. provided a settlement service, as identified in Section 1100 on the borrower's HUD-1, between October 1, 2009 and January 31, 2016." ECF 47-2 at 8, ¶ 2.22. The terms "Settlement Class Member" and "Settlement Class Members" refer to members of the Settlement Class. *Id.* at 9, ¶ 2.23.

According to Dorothy Merryman, the Settlement Administrator, defense counsel provided her with a list of 160 "unique loan numbers," pertaining to 160 loan transactions, along with the names of 160 borrowers and 72 co-borrowers. ECF 58-3 at 2, ¶ 5. This constitutes the "Class List." *Id.*[4] The borrowers on those loans are the Settlement Class Members. *Id.*

The Settlement Agreement provides for the payment of benefits to each Class Member in "an amount equal to 220% of the Section 1100 fees reflected on the Settlement Class Member's final HUD-1 Settlement Statement for the subject loan, less the amount of Line 1108 fees reflected on the Settlement Class Member's final HUD-1 Settlement Statement for the subject loan ((Section

---

[4] In the Motion, the Court was erroneously advised that "the parties identified 159 Primary Residential transactions for which All Star Title provided a settlement service during the relevant time period. . . ." ECF 58-1 at 4. At the hearing, the Court inquired about the discrepancy with regard to Ms. Merryman's identification of 160 transactions. Counsel advised that the correct number is 160, not 159.

1100 – Line 1108) x 2.2 = Settlement Benefit)." ECF 47-2 at 12, ¶ 6.1. According to the parties, the average per loan recovery is expected to exceed $2,200. ECF 54-1 at 2.  At the hearing, plaintiffs' counsel clarified that a borrower and a co-borrower are treated as one person for the purpose of receipt of the Settlement Benefit.

PRMI will fund the Settlement Benefits by way of a Common Fund administered by the Settlement Administrator, Dorothy Merryman. ECF 47-2 at 12, ¶ 5. The Settlement Agreement is a "direct pay" model, which means that Settlement Class Members who do not timely exclude will be mailed Settlement Benefits without having to file a claim or other request for benefits. ECF 58-1 at 4. Any amount remaining in the Common Fund more than three hundred days after the final judgment will be remitted by the Settlement Administrator to PRMI, with interest. ECF 47-2 at 12, ¶ 5.[5]

The parties submitted the Declaration of Ms. Merryman. ECF 58-3. She explains in detail the notice and claims process that was used, in conformity with the Order granting preliminary approval of the Settlement. On February 1, 2021, Merryman mailed the approved notice as to the "160 records on the Class List." ECF 58-3, ¶ 7. Of the 160 mailings, twenty notices were returned as undeliverable. *Id.* ¶ 8. Of those, Merryman was able to identify seventeen updated addresses and remailed those notices. *Id.* However, two of those seventeen notices were returned as undeliverable, and Merryman was unable to identify updated addresses. *Id.* ¶ 9. Merryman also "provided a website," at which members could view the Complaint, Settlement Agreement, and other relevant documents. *Id.*

Notably, Ms. Merryman avers that no objections to the Agreement were received.  *Id.* ¶ 10. Nor did she receive any requests for exclusion from the Agreement. *Id.*

---

[5] The parties have not moved for a *cy pres* award.

Pursuant to the Settlement Agreement, the parties have stipulated that all Class Members who do not timely exclude themselves from the Settlement will release Primary Residential and other "Releasees," as that term is defined in the Agreement, from the "Released Claims," which include, in part, "any and all claims…related to…the matters alleged and claims asserted in the Litigation and/or claims that could have been alleged therein…." ECF 47-2 at 18-20, ¶ 14.

### III.  Fed. R. Civ. P. 23

### A.  Fairness & Adequacy of Settlement

Fed. R. Civ. P. 23 permits a class action lawsuit to be settled or compromised with the express approval of the court after (1) requisite notice of the settlement is given to the plaintiff class; (2) the court holds a hearing and determines that the settlement is "fair, reasonable, and adequate"; (3) the parties file a statement identifying any settlement agreement; (4) the court provides a new opportunity to be excluded if the class action was previously certified; and (5) any objections of the plaintiff class to the settlement are received and considered by the court and the parties.  *See* Rule 23(e)(1) – (5).

"The purpose of Rule 23(e) is to protect the unnamed members of the class" from unjust or unfair settlements.  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592-93 (3d Cir. 2010).  Moreover, "[u]nder Rule 23(e), a district court acts as a fiduciary [for the class], guarding the claims and rights of the absent class members."  *Id.* at 595; *see Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019).

Rule 23(e) was amended in 2018.  If the settlement "would bind class members," a court may approve it "only on a finding that it is fair, reasonable, and adequate after considering whether":

(A) the class representatives and class counsel have adequately represented the class;

- 6 -

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate . . .

(D) the proposal treats class members equitably relative to each other.

The Fourth Circuit has developed several standards to determine if a settlement is fair, including whether it "was reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991); *see* Rule 23(e)(2)(B). To evaluate the fairness of a settlement, a court must consider: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) (citing *In re Jiffy Lube*, 927 F.2d at 159).

And, in determining whether the settlement is adequate, a court should consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Lumber Liquidators*, 952 F.3d at 484.

The Fourth Circuit has acknowledged that "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors . . . ." *Id.* at 484 n.8. Therefore, I shall consider the factors as outlined in pre-2018 class action cases.

First, notice was provided to the class in a reasonable manner. As noted, on February 1, 2021, the Settlement Administrator mailed the Court-approved notices as to 160 records on the Class List. Of those 160 mailings, ultimately only five notices were undeliverable.

Second, the parties have provided a statement identifying the Settlement Agreement, which was filed on the docket at ECF 47-2. They also reviewed the terms of the Settlement in the Joint Motion. Furthermore, Class Members were provided with a statement identifying the terms of the Settlement Agreement. ECF 58-3 at 5-9.

Third, the Class Members were informed of their right to object to the terms of the Settlement Agreement, to join the Agreement, or to opt out of the Agreement. More than 95% of the putative class appears to have received notice of the proposed Settlement Agreement. And, no one has asked to be excluded or otherwise objected. This is telling.

Fourth, as discussed below, the Settlement Agreement is fair, reasonable, and adequate.

There is no evidence of bad faith or collusion in the record. Instead, the Agreement, which was the result of extensive negotiations between the parties, is clearly the result of arm's length negotiations. As plaintiffs' counsel recounted at the hearing, they spent considerable time engaging in a pre-suit investigation of the claims. It was a tedious, document-intensive effort. They then conducted informal settlement negotiations with defendant. The parties also fully briefed a motion to dismiss. Then, after plaintiffs survived the motion to dismiss, counsel participated in discovery and a mediation session. As a result of these efforts, the parties were able to assess accurately the merits of the case, the defenses, and their respective positions.

Further litigation would be lengthy and expensive. And, from plaintiffs' perspective, it would not be risk-free.

Moreover, the conduct of plaintiffs' counsel during the litigation, as supported by their declarations (ECF 57-1; ECF 57-2), establishes that they are highly qualified and experienced litigators, and have previously served as class counsel in RESPA matters in this District. Therefore, counsel are able to evaluate the merits of the Class claims and the risks associated with litigation. In sum, the proposed Settlement Agreement is procedurally fair.

Further, the proposed Settlement Agreement secures a sizeable monetary award for the Class Members that is reasonable and adequate. Settlement Class Counsel estimates that each Class Member will recover a bit more than $2,200. This amount is "many times [greater than] the amount of the alleged kickback paid on each loan." ECF 58-1 at 16.

Notably, $2,200 represents more than two thirds of the total that a borrower would be entitled to recover, assuming a successful jury verdict under RESPA. ECF 54-1 at 9; *see* 12 U.S.C. § 2607(d)(2) ("Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."). And, from such awards, plaintiffs would owe legal fees. Therefore, plaintiffs will recover by way of the settlement as much as they could possibly recover from a trial. But, there is no guarantee that they would prevail at a trial. And, any victory would be well into the future, because of the time it takes for a case to reach trial.

In addition, the relief will be distributed to plaintiffs through a direct pay structure. And, the benefits will not be reduced by attorneys' fees, expenses, or settlement administration costs.

Moreover, the benefits are consistent with the amount and structure of settlements in similar RESPA cases which earned final court approval in this District. *See, e.g.*, *Perzinski v. Competitive Title Agency, Inc.*, TJS-18-1511, ECF No. 94 (D. Md. June 25, 2020).

Because the settlement amount was decided during arms-length negotiations, and in light of the factors discussed above, I am persuaded that the Settlement Agreement is fair, reasonable, and adequate.  It satisfies Rule 23(e).

### B.  Certification of the Class

Rule 23(a) sets forth four prerequisites for certification of a class: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class; (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the four prerequisites set out in Rule 23(a), the requirements of one of three subsections of Rule 23(b) must also be satisfied. Plaintiffs seek certification pursuant to Rule 23(b)(3), requiring them to demonstrate that common questions of law or fact predominate over questions affecting only individual members and that a class action is the superior method for the fair and efficient handling of the claim. Fed. R. Civ. P. 23(b)(3)(A)-(D). These criteria are referred to as predominance and superiority, discussed *infra*.

The numerosity prerequisite is satisfied if joinder of all putative class members would prove to be "impracticable." Fed. R. Civ. P. 23(a)(1). Courts in this District have previously noted that, generally speaking, "courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998). In fact, "'[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical.'" *Baehr, et al. v. Creig Northrop Team, P.C.*. WDQ–13–0933, 2014 WL 346635, at * 8 (D. Md. Jan. 29, 2014) (quoting *Dameron v. Sinai Hosp. of Balt., Inc.*,

595 F. Supp. 1404, 1408 (D. Md. 1984)).  Here, the Settlement Class exceeds 150 borrowers. This easily satisfies the numerosity requirement.

Commonality requires that there are question of law or fact common to the class. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). "A common question is one that can be resolved for each class member in a single hearing." *Id.* On the other hand, a question is not common if its resolution "turns on consideration of the individual circumstances of each class member." *Id.* "The common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).

Here, all members of the class have common claims.  The claims pertain to mortgages that were brokered by Primary Residential and closed through All Star at some time between October 1, 2009 and January 31, 2016. The common issues relating to defendant's alleged malfeasance with respect to these loans plainly predominate over the individual circumstances of each class member.

 "Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *George v. Duke Energy Retirement Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009) (quoting *Lienhart*, 255 F.3d at 146).  I am satisfied that the claims of the named plaintiffs in this case are typical of the class.

Finally, the named plaintiffs must be able to fairly and adequately protect the interests of the class members to satisfy the adequacy of representation requirement.  *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 268-69 (D. Md. 2004).  "The adequacy of representation requirement involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2)

whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *George*, 259 F.R.D. at 232.

In this case, plaintiffs do not have any interests that are contrary to the Settlement Class. Rather, as noted, they share claims that are common to all Class Members.

Further, plaintiffs' counsel is well-qualified for this litigation. They have represented class action plaintiffs in this District before and, in this case, have steered the putative class to a fair, reasonable, and adequate settlement.

In sum, Rule 23(a) is satisfied.

In addition to meeting all four requirements of Rule 23(a), a putative class must show that the class falls into one of the three categories for certification specified in Rule 23(b). Plaintiffs seek certification pursuant to Rule 23(b)(3). Under 23(b)(3), plaintiffs must demonstrate that the common questions of law or fact predominate over questions affecting only individual members and that a class action is the superior method for the fair and efficient handling of the claim. These criteria are referred to as predominance and superiority.

The only claims here are those of the class as a whole – all Settlement Class Members allege that they were victims of a wide-spread referral kickback scheme between defendant PRMI and All Star. The question of the existence of this scheme is a common question that predominates over any individual questions. Further, there are no apparent individual questions.

The class action also meets the superiority test. Class treatment is superior to other forms of adjudication because of the likelihood that Class Members would not otherwise be aware of their claims against defendant. Moreover, on an individual basis, the claims are not particularly substantial, and many lawyers might not regard an individual case as worth their time, financially.

Put another way, it would be impractical to litigate these claims individually, relative to the potential damages.

In sum, Rule 23(b)(3) is also satisfied. Therefore, I will certify the proposed class, as I described earlier and as it is described in the Settlement Agreement.

For these reasons, and because no objections have been made, I will grant the "Joint Motion for Final Approval of Class Action Settlement Agreement." ECF 58.

### IV.  Attorneys' Fees & Costs And Service Award to Plaintiffs

I next consider the Fee Motion, which includes a request for a service award for the Class Representatives. ECF 54-1.

Settlement Class Counsel has asked for approval of an award of attorneys' fees equal to one-third of the Common Fund, plus expenses in the amount of $7,000. ECF 54. The Common Fund is estimated to be valued at $347,158.55. Thus, counsel's requested fee is $115,719.52. Notably, the attorneys' fees will not come from the funds designated for Class Members. ECF 54-1 at 9. The request is uncontested by defendant. And, no Class Members have objected.

Rule 23(h) of the Federal Rules of Civil Procedure governs attorneys' fees in class actions. It provides that a court may award "reasonable" attorneys' fees.  Additionally, RESPA provides: "In any private action brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with reasonable attorneys fees." 12 U.S.C. § 2607(d)(5).

A court bears the responsibility to determine that fees are reasonable, even in the absence of objections.  *See* Fed. R. Civ. P. 23(h), 1993 Advisory Committee notes.  As the Advisory Committee notes indicate, "[t]he agreement by a settling party not to oppose a fee application up to a certain amount . . . is worthy of consideration, but the court remains responsible to determine a reasonable fee." *Id.*

- 13 -

In a class action, "[t]here are two methods commonly used for calculating an attorney's fee awards: the lodestar method and the 'percentage of recovery' method." *Decohen v. Abbasi,* LLC, 299 F.R.D. 469, 481 (D. Md. 2014) (footnote omitted).  Courts have favored the percentage-of-recovery method when the efforts of a particular plaintiff and his or her attorney create, discover, or increase a fund to which others also have a claim.  *See, e.g.*, *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009) (endorsing percentage-of-recovery method to calculate attorney fee award out of settlement fund in nationwide products liability class action); *see also* The Manual for Complex Litigation § 14.231 (4th ed. 2021) (stating that "reporting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage method in common-fund cases"). "The percentage of the recovery method involves an award based on a percentage of the class recovery, set by the weighing of a number of factors by the court." *Whitaker v. Navy Fed. Credit Union*, RDB-09-2288, 2010 WL 3928616, at \*4 (D. Md. Oct. 4, 2010).

However, the lodestar method is also commonly used to calculate reasonableness.  *See, e.g.*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("encourag[ing] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage").  The lodestar method determines the appropriate fee award by multiplying the reasonable hourly rate by the number of hours reasonably expended.  *McAfee v. Boczar,* 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014); *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008). There is "a strong presumption that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88-89) (internal quotation marks omitted).

Courts in this circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 679 (D. Md. 2013). Moreover, the Committee Notes to Rule 23(h) indicate that a court may

evaluate whether a fee award in a "common fund" case, such as this one, is reasonable based on either a percentage-of-recovery method or the lodestar method. *See* Fed. R. Civ. P. 23(h), 1993 Advisory Committee Notes.

When using the percentage of recovery method, district courts in this circuit have analyzed the following seven factors: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. *Singleton*, 976 F. Supp. 2d at 684; *see, e.g., Kelly v. Johns Hopkins Univ.*, GLR-16-2835, 2020 WL 434473, at *2 (D. Md. Jan. 28, 2020); *Fangman v. Genuine Title, LLC*, RDB-14-0081, 2017 WL 86010, at *4 (D. Md. Jan. 10, 2017).

In light of the complexity of the case, the risk undertaken by counsel that plaintiffs would not prevail, and in view of the various factors considered with respect to the reasonableness of the settlement, such as time devoted to investigating the case, litigating, and settling, and the quality and skill of the attorneys involved, a fee equal to one-third of the recovery is a reasonable percentage of the recovery in this case.

The lodestar calculation confirms the reasonableness of this award. As noted, the lodestar method determines the appropriate fee award by multiplying the reasonable hourly rate by the number of hours reasonably expended.  *McAfee,* 738 F.3d at 88; *Grissom,* 549 F.3d at 320.

Here, Settlement Counsel Melissa English, of the law firm Smith, Gildea & Schmidt, LLC ("SGS"), and Veronica Nannis, of the law firm Joseph, Greenwald & Laake, P.A. ("JGL"), have each submitted affidavits documenting the respective fees and expenses of each firm. The Affidavit of Ms. English states that for the SGS firm alone, hourly billing for the case has exceeded $110,000 for 389 hours of work performed by nine attorneys of varying levels of experience. Ms.

English has indicated that her work on the case was billed at the rate of $425 per hour; Michael Paul Smith, equity partner of SGS, billed at $475 per hour; and their associates billed at the rates of $300 and $225 per hour. ECF 57-1 at 7. These rates are consistent with (although at the high end of) the reasonable rates for attorneys with similar experiences, as set forth in Appendix B of the Court's Local Rules.

Additionally, four attorneys at JGL, serving as co-Class Counsel, logged an additional 21.5 hours, at hourly rates varying between $200 and $475, with a total billable value of $5,887.50. *See* ECF 57-2.

Thus, in total, from the opening of their file on this case through April 28, 2021, the date of the filing of the Fee Motion, Settlement Class Counsel collectively expended over 410 hours. When multiplied at the rates referenced above, this equates to $116,782.50. ECF 54-1 at 15-16.[6]

The work performed by plaintiffs' counsel included the initial investigation and development of the case; filing of the Complaint; engaging in initial settlement negotiations; motions practice; and a two-day mediation. Additional time was devoted to preparing settlement documentation and paperwork for Class notification.

Moreover, the legal and factual issues posed by this case were complex.  Indeed, the review of documents needed to verify the allegations would have been painstaking.  Therefore, in my view, the requested fee is reasonable.

Finally, I will grant plaintiffs' request that the Court approve a service award of $1,000 for Donaldson and $1,000 for Walter and Dawn Sperl, combined, to be paid by defendant, in addition to the other settlement benefits. ECF 54; ECF 47-2, ¶ 11.

---

[6] Upon review of the time sheets provided by the attorneys, *see* ECF 57-1 at 7-41; ECF 57-2 at 5-6, the Court is satisfied that any duplication of effort was either minimal or justifiable.

The proposed service award for the plaintiffs of $1,000 represents less than 1% of the Common Fund.  Each of the plaintiffs cooperated with Class Counsel and expended effort to see this case through to settlement, which required them to be participate in the pre-suit investigation; provide detailed information concerning their loan transactions with PRMI; appear at the scheduled mediation conference; and be ready, willing, and able to appear at trial, if necessary. ECF 57-1, ¶ 34.  Incentive payments or service awards have been regularly allowed in class action cases. *See, e.g., In re Tyson Foods, Inc*., RDB–08–1982, 2010 WL 1924012, at *4 (D. Md. May 11, 2010); *see also Perry v. FleetBoston Financial Corp*., 2005 WL 1527694 (E.D. Pa. June 28, 2005) (awarding $5000 each to three class representatives); *Bonett v. Educ. Debt Services, Inc. et al.*, Civ. No. 01-6528, 2003 WL 21658267, *7 (E.D. Pa. May 9, 2003) (granting named plaintiff a $4,000 incentive award).

And, judges of this Court have approved comparable awards.  *See*, *e.g.*, *Erny v. Mukunda*, DKC-18-3698 (awarding $1,000 service awards to named plaintiffs); *Hauk v. LVNV Funding, LLC.,* CCB-09-003238 (awarding $4,000 in incentive payments to plaintiffs); *Miller v. Prestige Financial*, Case BEL-09-1671 (awarding a $6,000 incentive award to each representative plaintiff); *Muga v. BB & T*, WDQ-10-00890 (awarding a $7,500 incentive payment); *Castillo v. Nagle & Zaller, P.C.,* WDQ-12-002338 (awarding $3,500 to the representative plaintiff); *see also Gray v. Fountainhead Title*, WMN 03-01675; *Naughton v. Millennium Escrow and Title*, WMN 02-3238; *Clark v. Amerix Mortgage,* WMN 02-cv-2078.

Additionally, neither defendant nor Class Members have opposed plaintiffs' request.

Accordingly, I will grant the Fee Motion, awarding attorneys' fees in the amount of $115,719.52; costs in the amount of $7,000; and a service award of $1,000 to Donaldson and a joint award of $1,000 to Walter and Dawn Sperl.

### V.  Conclusion

For the foregoing reasons, I shall grant the Joint Motion (ECF 58) and Fee Motion (ECF 54).

A separate Order follows.

Date: May 28, 2021                                        /s/
                                            Ellen L. Hollander
                                            United States District Judge